1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10 | DETECTIVES ENDOWMENT ASSOCIATION
11 | ANNUITY FUND, individually and on behalf of all
others similarly situated,

12 |                                             NO.
                    Plaintiff,
13 | v.                                         **CLASS ACTION COMPLAINT**

14 | AMAZON.COM, INC., ANDREW R. JASSY,          <u>**JURY TRIAL DEMANDED**</u>
15 | BRIAN T. OLSAVSKY, and DAVID FILDES

16 |              Defendants.

17      Plaintiff Detectives Endowment Association Annuity Fund ("DEA" or "Plaintiff"),

18 | individually and on behalf of all others similarly situated, alleges the following upon information

19 | and belief except as to allegations specific to Plaintiff, which are alleged upon personal

20 | knowledge. Allegations based on information and belief are based on, *inter alia*, the investigation

21 | of counsel which, in turn, is based on the analysis and review of, among other things, public

22 | statements and filings with the United States Securities Exchange Commission ("SEC") made by

23 | Amazon.com, Inc. ("Amazon" or "Company"), news releases issued by Amazon, news articles

24 | and analyst reports regarding Amazon, and other publicly available information.

25
26

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

I.      NATURE AND SUMMARY OF THE ACTION

1.      This is a class action on behalf of persons and entities that acquired Amazon common stock between July 30, 2021 and April 28, 2022, inclusive (the "Class Period"), against the Defendants Amazon, President and Chief Executive Officer Andrew R. Jassy ("Jassy"), and Chief Financial Officer and Senior Vice President Brian T. Olsavsky ("Olsavsky"), and its Head of Investor Relations, David Fildes (collectively, "Defendants"), arising from Defendants' violations of sections 10(b) and 20 (a) of the Securities Exchange Act of 1934, (the "Exchange Act"), 15 U.S.C. §§ 78(b) and 78(a) and Rule 10b-5 promulgated by the SEC, 17 C.F.R. § 240.10 b-5.

2.      Amazon, headquartered in Seattle, Washington and incorporated in Delaware, is one of the largest technology companies in the world. Amazon has multiple business lines, including *inter alia*, online retail, cloud computing, data, and streaming services and distribution, inventory and supply, chain management, and fulfillment and logistics.

3.      Widely known for being an online retailer, Amazon acts as a merchant and retailer for third-party merchandise and its own line of Amazon-branded products via Amazon.com.

4.      As the owner and operator of Amazon.com, Amazon continuously collects, stores, and analyzes the data of its sales, customers, spending habits, and seller information, which also gives its significant insight into consumer demand and trends.

5.      Amazon maintains its own warehouse, distribution, and data centers. By the end of 2019, Amazon's distribution, warehouse, and data center space covered approximately 192 million square feet. Thereafter, the Company engaged in a massive expansion spree. As a result, it expanded its data and fulfillment centers until they covered approximately 387.1 million square feet by the end of 2021, effectively doubling in size in two years. But, rather than a natural expansion compelled by demand and business, Amazon's spending spree on warehouse and fulfillment space greatly exceeded its needs and demand for its services. By no later than July 29, 2021 – the advent of the Class Period – the Company was already burdened with an excess

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

of space and employees, which greatly outpaced need, and which burden escalated as its over-expansion continued thereafter.

6.    All the while, Defendants failed to disclose and actively concealed from investors that rather than being necessary to meet short and long term demand, Amazon's escalated and rapid expansion had created an expensive and unnecessary over-expansion situation that exposed Amazon to massive losses that threatened to cause, and did cause, the material and significant depletion of its earnings.

7.    Unbeknown to investors, by the beginning of and throughout the Class Period, its expansion, far outpacing demand, required Amazon to substantially cut back  its warehouse and fulfillment capacity, and caused it to absorb massive losses.

8.    Ultimately, on April 28, 2022, and as a direct consequence of such over-expansion and excessive spending, Amazon disclosed a $3.8 billion first quarter loss – its first reported net quarterly loss seven years. The first quarter 2022 loss reflected, in part, $6 billion in "incremental costs" arising from the Company's doubling of its warehouse, fulfillment, and data center space, from 192 million square feet in December 2019 to approximately 387.1 million square feet at the end of 2021.  Overcapacity in Amazon's fulfillment and transportation network created $2 billion in additional costs year over year. And Amazon's over-expansion forced the Company to pivot into "cost efficiency" mode and both halt and cancel planned expansion projects.

9.    The April 28, 2022 revelation that Amazon's expansion was excessive, not supported by actual demand, unsustainable, and had created a significant economic burden and yoke around its neck, causing billions of dollars in losses, shocked investors and surprised the market.  On this news, Amazon's stock fell 14.05% from $2,891.93 per share on April 28, 2022, to $2,485.63 per share by the close of trading on April 29, 2022, a decline of $406.30 per share.

10.    Throughout the Class Period, Defendants made materially false and misleading statements regarding Amazon's business, operations, and policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Amazon was engaged

CLASS ACTION COMPLAINT - 3

1   in an overly aggressive expansion of its warehouse and fulfillment network; (ii) its over
2   expansion was not appropriately controlled or planned; (iii) such over expansion was not
3   supported by demand; (iv) the over-expansion had created an economic burden on the Company
4   that exposed Amazon to billions in unnecessary "incremental costs" and; (v) would force the
5   Company to engage in large scale "cost efficiency" procedures and steps to unburden itself from
6   the weight of its self-inflicted economic yoke.

7       11.    Defendants' false and misleading statements and material omissions artificially
8   inflated trading price of its stock, which trading price substantially declined when those wrongful
9   acts and omissions were disclosed to investors, causing significant losses and damages to
10  Plaintiff and the members of the Class.

11  **II.     JURISDICTION AND VENUE**

12      12.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange
13  Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17
14  C.F.R. § 240.10b-5).

15      13.    This Court has jurisdiction over the subject matter of this action pursuant to 28
16  U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

17      14.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and
18  Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the
19  alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts
20  charged herein, including the dissemination of materially false and/or misleading information,
21  occurred in substantial part in this Judicial District.  In addition, the Company's principal
22  executive offices are in the Judicial District.

23      15.    In connection with the acts, transactions, and conduct alleged herein, Defendants
24  directly and indirectly used the means and instrumentalities of interstate commerce, including
25  the United States mail, interstate telephone communications, and the facilities of a national
26  securities exchange.

CLASS ACTION COMPLAINT - 4

III.    **PARTIES**

16.    Plaintiff DEA is a multi-employer defined benefit union pension fund based in New York, New York.  As indicated in the certification attached hereto, Plaintiff purchased shares of Amazon common stock at artificially inflated prices during the Class Period and suffered damages as a result of the Defendants' violations of the federal securities laws alleged herein.

17.    Defendant Amazon is incorporated under the laws of Delaware and maintains its headquarters in Seattle, Washington. Amazon's common stock trades on the NASDAQ under the "AMZN" ticker symbol.  As of April 20, 2022, Amazon had over 508 million shares of common stock outstanding.

18.    Defendant Andrew R. Jassy ("Jassy"), has been the President, Chief Executive Officer and a director of Amazon since July 2021.

19.    Defendant Brian T. Olsavsky ("Olsavsky"), was the Company's Chief Financial Officer ("CFO") and Senior Vice President since June 2015.

20.    Defendant David Fildes ("Fildes") has been Amazon's Head of Investor Relations since June 2017.

21.    Defendants Jassy, Olsavsky, and Fildes (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of Amazon's reports filed with the SEC, testimony before Congress, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations

CLASS ACTION COMPLAINT - 5

which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pled herein.

## IV.   FACTUAL ALLEGATIONS

22.   Amazon, headquartered in Seattle, Washington and incorporated in Delaware, is one of America's largest technology companies, with multiple business lines including, *inter alia*, e-commerce services and distribution, inventory and supply chain management, and fulfillment and logistics.  The Company is well known as being an online retailer, acting as a merchant and retailer for third-party merchandise and its own line of Amazon-branded products via Amazon.com.

23.   In early 2020, America and the global economy were struck by the COVID pandemic. This pandemic caused massive lockdowns and disruptions that prevented or limited shoppers' ability to shop and make purchases in brick and mortar stores. Consequently, the purchases of goods through e-commerce – including Amazon's e-commerce business – increased significantly as customers ordered those goods online, which were thereafter delivered to their homes or businesses. Prior to COVID, Amazon had aggressively invested significant capital to expand its infrastructure and fulfillment networks in order to enable it to meet delivery of goods on the same day as they were ordered online or within very fast time frames.

24.   As a consequence of the effect of COVID related lockdowns and increased e-commerce, Amazon continued to heavily invest in increasing its infrastructure and fulfillment network capacity. By the end of 2021, it had more than doubled its warehouse distribution and data center space – expanding to over 387.1 million square feet.

25.   By no later than July 2021, when the Class Period begins, it was clear to Defendants that Amazon's warehouse and fulfillment center capacity exceeded demand. In response - and as would be reported almost a year later in the *Wall Street Journal* - Defendants made the first of what would become a series of intensifying cutbacks to Amazon's fulfillment capacity. *See* Dana Mattioli, *Amazon CEO Andy Jassy's First Year on the Job: Undoing Bezos-*

CLASS ACTION COMPLAINT - 6

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Led Overexpansion*, WALL ST. J. (June 16, 2022) ("June 16, 2022 WSJ Article"). Despite their knowledge that warehouse and fulfillment center capacity exceeded demand, necessitating significant cutbacks, Defendants concealed those significant cutbacks from the public while at the same time assuring investors that the expansion plan remained on track and necessary.

**False and Misleading Statements and Omissions during the Class Period**

26.     On July 29, 2021, Amazon held its second-quarter 2021 earnings conference call with the investment community, ("Second Quarter 2021 Earnings Call"), shortly after the market closed.  Defendants Olsavsky and Fildes participated in the call on the Company's behalf.

27.     During the Second-Quarter 2021 Earnings Call, Defendant Olsavsky represented that, although "people were at home less as [COVID-related] restrictions and lockdowns eased in some of our largest geographies" during the second-quarter of 2021, which contributed to declines in Amazon's year-over-year revenue growth, the Company's aggressive expansion strategy was sound.  Olsavsky stated on the call that "[a]s we think about the pull-forward in demand we've seen these past 18 months, it has required and will continue to require a significant amount of investment in our fulfillment network.  Our teams have done a remarkable job stepping up to serve customers and support our vendors and sellers, and we have worked hard to increase capacity at a rapid rate."

28.     Upon responding to an analyst's question regarding fulfillment costs, Olsavsky further represented that "on the fulfillment side …. we're adding a lot of capacity. . . . [T]here has been very strong multiyear demand here that we are still catching up with from last year. . . . So we are continuing to add, and most of that development is really ahead of us in the second half of the year. . . . [W]e've literally nearly doubled our network here in the last 18 months from a size standpoint."  And in response to another analyst's question regarding "growth assumptions for e-commerce," Olsavsky stressed that "[w]e've been playing catch-up pretty much since the pandemic started, but what suffered is space and space constraints.  And it's gotten better, but it was a factor last year. . . . [I]n the United States, while it's improving, it still hasn't reached the

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

pre-pandemic levels.  So we have a lot of growth to do there."  Olsavsky later added during the Second Quarter 2021 Earnings Call that Amazon's "space planning" was "why we're building out our network so quickly in our minds.  It's hard to do quickly, but we're moving as quickly as possible.  And again, we have a lot of new capacity being added in the second half of the year."

29.     But in September 2021, and as later reported in the on June 16, 2022, WSJ Article, Defendants made significant cutbacks to Amazon's fulfillment capacity, without disclosing those cutbacks to investors.

30.     On October 28, 2021, Amazon issued a press release, which it filed with the SEC on Form 8-K, announcing its financial results for third-quarter 2021, ("Third Quarter 2021 Press Release").  The Third Quarter '21 Press Release, signed by Defendant Olsavsky, quoted Defendant Jassy as stating that increased demand related to the COVID pandemic had "driven extraordinary investments across our businesses to satisfy customer needs—just one example is that we've nearly doubled the size of our fulfillment network since the pandemic began. . . . It'll be expensive for us in the short term, but it's the right prioritization for our customers and partners."

31.     Also on October 28, 2021, the Company held its third-quarter 2021 earnings conference call, (Third Quarter 2021 Earnings Call"), in which Defendants Olsavsky and Fildes participated in the call on the Company's behalf.  Therein, Olsavsky stated that "[w]e have nearly doubled our operations capacity in the past two years to keep up with customer demand," while assuring investors that the costs of that increased capacity were still warranted, adding:

> Last quarter we discussed the physical capacity we were adding to meet customer demand.  We made strong progress in Q3 to build and open new facilities and as a result for the first time since the pandemic began, we are no longer capacity constrained for physical space in the network.  September alone we brought online more than 100 new buildings in the United States including fulfillment centers, sort centers, and last mile delivery stations.  For the year, we expect our 2021 footprint additions to exceed last year's build-out, which was also significant.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

> Put this in perspective, we are on track to double our fulfillment
> network over the two-year period since the pandemic's early days.

32.    On the Third-Quarter 2021 Earnings Call, Olsavsky further assured investors that Amazon's expansion plans were proceeding apace and remained necessary to satisfy demand. With regard to "fulfillment capacity," an analyst on the call inquired whether Amazon could "be ahead of plan for next year and kind of cut down the investment there?"  Olsavsky responded, "while we've been chasing really demand for the last two years, we've been doing it—as I said, we're running at about 100% pretty much all of last year.  We are just now getting caught up on space for inventory. . . . But we expect the long-term trends to be strong in this business.  We're investing as such." Another analyst asked, "can you just talk to us big picture about any changes or factors that have changed the company's view about the long-term profitability, the long-term return on invested capital of the retail business now as opposed to at the end of 2019?,"  to which Defendant Fildes responded:

> So when you look at retail, it's certainly expensive right now,
> especially with the cost I've laid out in Q3 and Q4 for us to service
> that business. . . . We want to make sure that we're understanding
> where our costs and where our profits happen to be. . . . I get to see
> investments in warehouses, trucking programs, new offerings that
> we do, new country expansion.  We . . . make sure that not only
> are we delighting customers but we're delighting shareholders in
> the long-term.
>
> So we feel good about that.

33.    During the Third-Quarter 2021 Earnings Call, an analyst asked whether Amazon's efforts to increase same-day deliveries to customers "leverage[d] kind of your existing fulfillment center footprint."  Olsavsky responded that:

> . . . we're well on our way to providing ultrafast delivery for things that
> require ultrafast or things like groceries and others, and we see that
> expanding. . . . you have to have a cost structure and a logistics
> network that will pay for the delivery over time.  So we see it as
> part of an offering that we offer to customers that ranges from two
> days to one day to two hours or one hour in some cases.  So we
> like to meet customers where they are, when they need things, and
> we're working on speed consistently.

CLASS ACTION COMPLAINT - 9

34.     But in December 2021, as later reported by the on June 16, 2022, WSJ Article, Defendants again made significant cutbacks to Amazon's fulfillment capacity, again without disclosing those material cutbacks to investors.

35.     On February 3, 2022, Amazon issued a press release, filed with the SEC on Form 8-K, announcing its financial results for fourth-quarter 2021, ("Fourth Quarter 2021 Press Release"), which was signed by Defendant Olsavsky, quoting Defendant Jassy as stating that "we continue to feel optimistic and excited about the business as we emerge from the pandemic. When you combine how we're staffing and scaling our fulfillment network to bring even faster delivery to more customers, . . . there's a lot to look forward to in the months and years ahead."

36.     Also on February 3, 2022, the Company held its fourth-quarter 2021 earnings conference call, ("Fourth Quarter 2021 Earnings Call").   Defendants Olsavsky and Fildes participated in the call on the Company's behalf.  During the Fourth Quarter '21 Earnings Call, Olsavsky stated:

> Despite lapping 2020's extraordinary sales growth, we continued to see an increase in customer demand and sales during the remainder of 2021, even as the economy opened back up. . . . We have invested significantly to keep pace with this demand, including nearly doubling our operations capacity in the past two years, expanding our fulfillment center footprint while adding significant transportation assets to ensure fast on-time delivery. . . . [T]he fundamentals of our retail business are strong, and we are optimistic about a number of growth businesses and a strong innovation pipeline.

37.     On the Fourth-Quarter 2022 Earnings Call, when responding to an analyst's question about Amazon's investments to expand the Company's same-day delivery capacity, Olsavsky assured investors that "[w]e feel good about where we are.  We're continuing to build capacity that enables us to hit those [same-day delivery] cutoffs. . . . [A]s we've mentioned, we've doubled the capacity in the network over the last two years.  That is not all just to handle today's volume.  It's also to handle getting closer to the customer and being able to ship faster.

CLASS ACTION COMPLAINT - 10

So, we like where we stand. . . . We like the progress we've been making lately, but we think the future is bright on that dimension."  Olsavsky further represented that "there's a lot of expansion that's been going on in the network, and we feel good about the basic contributors of profitability."

38.     During the same call, another analyst asked, "Brian [Olsavsky], you doubled your fulfillment network and also your head count over the past two years.  I believe you're about 2.5 years into this investment cycle.  Where is Amazon in terms of emerging from this investment cycle?  Can you see a slowdown in that big investment spending this year?"  In response, Olsavsky discussed the Company's capital expenditures, noting that "just under 40% of that CapEx is going into infrastructure," and

> [a]bout just under 30% is fulfillment capacity, building warehouses, warehouse only, not transportation.  And then just under 25% is transportation capacity and building out our AMZL network principally globally. . . . [T]hose are the three main areas.
>
> If I look to the future, we're still working through some of our plans for 2022, but it's coming into focus a bit.  We see CapEx for infrastructure going up.  We still have a very fast-growing business that's growing globally, and we're adding regions and capacity to handle usage that still exceeds revenue growth in that business.  So we feel good about making those investments.
>
> On the fulfillment center side, that's about 30% of the spend in the last two years.  We see that moderating, and that will probably now match growth of our underlying businesses.

39.     On April 14, 2022, the Company issued a Letter to Shareholders signed by Defendant Jassy, which accompanied Amazon's Annual Report for the year ended December 31, 2021, and was filed with the SEC on Form 8-K.  In the Letter to Shareholders, Defendant Jassy discussed increased demand and related growth that Amazon attributed to the COVID pandemic, stating in pertinent part:

> We spent Amazon's first 25 years building a very large fulfillment network, and then had to double it in the last 24 months to meet

CLASS ACTION COMPLAINT - 11

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

customer demand. . ..

Ironically, just before COVID started, we'd made the decision to invest billions of incremental dollars over several years to deliver an increasing number of Prime shipments in one day. This initiative was slowed by the challenges of the pandemic, but we've since resumed our focus here. . .. [W]e believe our over 200 million Prime customers, who will tell you very clearly that faster is almost always better, will love this. . .. This type of iterative innovation is never finished and has periodic peaks in investment years, but leads to better long-term customer experiences, customer loyalty, and returns for our shareholders.

40.     The statements set forth above in Paragraphs 26-28, 30-33, and 35-39 were materially false and misleading, and omitted information necessary to make the statements not materially false and misleading.  Specifically, Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements that failed to disclose that, rather than necessary to meet short-term and long-term customer demand, Amazon's rapid expansion resulted in substantial overcapacity that drove massive losses and would substantially and adversely diminish the Company's earnings moving forward.  Indeed, by July 2021 and continuing throughout the Class Period, Amazon's capacity growth far outpaced demand, forcing Defendants to make a series of intensifying cutbacks to warehouse and fulfillment capacity, albeit without disclosure to investors.  As a result of the foregoing, Defendants' positive statements about Amazon's business, operations, and prospects were materially false and misleading, and lacked a reasonable basis.

**Disclosure of the Adverse Truth**

41.     On April 28, 2022, Amazon announced its financial results for first-quarter 2022, ending March 31, 2022, and disclosed a $3.8 billion net loss, its first quarterly loss since 2015. Defendant Jassy admitted that Amazon was "no longer chasing physical or staffing capacity," which "may take some time."  On that same day, Amazon held its first-quarter 2022 earnings conference call with analysts, (First Quarter 2022 Earnings Call"), wherein Defendant Olsavsky disclosed $6 billion of "incremental costs," including $4 billion of costs that "we consider to be

CLASS ACTION COMPLAINT - 12

more within our control and are working to reduce, adding "these additional costs correspond to the state of the labor force and fulfillment network."

42.    Regarding labor, Olsavsky stated that "we've quickly transitioned from being understaffed to being overstaffed, resulting in lower productivity.  This lower productivity added approximately $2 billion in cost compared to last year."  And with regard to the fulfillment network, Olsavsky admitted:

> [W]e currently have excess capacity in our fulfillment and transportation network. . . . [W]e made conscious decisions in 2020 and early 2021 to not let space be a constraint on our business.  During the pandemic, we were facing not only unprecedented demand but also extended lead times on new capacity, and we've built towards the high end of a very volatile demand outlook. . . . We estimate that this overcapacity, coupled with the extraordinary leverage we saw in Q1 of last year resulted in $2 billion of additional costs year over year in Q1.  We do expect the impacts of this fixed cost leverage to persist for the next several quarters as we grow into this capacity.
>
> When combining the impacts of the externally driven costs and the internally controllable costs, we get approximately $6 billion in incremental costs for the quarter.  Approximately two-thirds of these costs are within our control.  And with demand normalizing, we remain focused on rightsizing our cost structure and driving out any cost inefficiencies.  Our guidance includes an expectation that we will incur approximately $4 billion of these incremental costs in Q2.

43.    Olsavsky further admitted on the First-Quarter 2022 Earnings Call that "[i]n the consumer business . . . we currently have some excess capacity in the network that we need to grow into, so we have brought down our build expectations. . . . [W]e expect fulfillment dollars spent on capital projects to be lower in 2022 versus the prior year.  We also expect transportation[] dollars spent on capital projects to be flat to slightly down."  Defendant Orlovsky further acknowledged that there was pressure on earnings and that he could "see it on the cost side."

44.    The Company's April 28, 2022, disclosures surprised an unsuspecting market and

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

caused a precipitous decline in the market price of Amazon common stock.  Specifically, in response to those disclosures, Amazon common stock declined from a closing price of $2,891.93 per share on April 28, 2022, to a closing price of $2,485.63 per share on April 29, 2022, a decline of 14.05%.

45.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

46.     Since the April 28, 2022 disclosure by Amazon of the adverse truth, securities analysts have recognized the enduring problems created by Amazon's over-expansion.  For example, a report disseminated to the market on May 4, 2022 by Phillip Capital regarding Amazon entitled "Cost pressures to linger," noted that Amazon's "higher costs hurt margins" and that the Company was "overstaffed."

47.     Post-Class Period reporting has confirmed that, when they made their misrepresentations concerning Amazon's expansion and fulfillment capacity, Defendants had already instituted significant cutbacks.  As reported in the June 16, 2022 WSJ Article, during and under Defendant Jassy's leadership and direction, those cutbacks occurred in at least July, September, and December 2021.

48.     Technology industry news site *The Information* similarly reported on May 24, 2022, that Amazon had "reversed course on an aggressive build-out," and beginning in March 2022, Amazon "canceled plans for nearly 10 million square feet of warehouse space, shelving plans for more than a dozen fulfillment centers and delivery facilities around the U.S. as the company wrestles with a costly space glut on the heels of the pandemic."[1]

49.     The canceled facilities included both "the cavernous (sometimes robotics-enabled) warehouses known as fulfillment centers, where workers pack customer orders before

---

[1] Paris Martineau, *Amazon Quietly Axed Millions of Square Feet of Warehouse Space*, The Information (May 24, 2022), *available at* https://www.theinformation.com/articles/amazon-quietly-axed-millions-of-square-feet-of-warehouse-space, last visited on July 7, 2021.

CLASS ACTION COMPLAINT - 14

Tousley Brain Stephens PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

they are transported to shipping centers," and "smaller shipping hubs known as delivery stations, which operate like local post offices dedicated exclusively to Amazon packages . . . that reflect the internet retailer's growing fixation on shipping speeds."[2]   Fulfillment center cutbacks included canceling warehouses measuring roughly 1 million square feet each in states including New Hampshire, Texas, and Wisconsin—which had not yet opened or been finally approved by local authorities—and in California and Illinois, which were already built and have since been listed by Amazon for sublease.  *Id*.  Canceled delivery stations included stations in California, Connecticut, and North Carolina, which were not yet open, and two planned stations in the San Francisco Bay Area, which Amazon closed and subleased in April 2022.  *Id*.  Amazon is also reportedly looking to sublease a former Cadillac dealership in Manhattan, which it rented in early 2021 and subsequently closed.  *Id*.

50.     On June 6, 2022, Amazon announced the departure of Dave Clark, the CEO of Amazon's worldwide consumer division, who had spearheaded the Company's massive expansion of its fulfillment and warehouse space. The departure, which was attributed to Clark's decision to "pursue other opportunities," came just six weeks after Amazon's disclosures of April 28, 2022.

**V.     CLASS ACTION ALLEGATIONS**

51.     Plaintiff brings this action as a class action pursuant to Rule 23, *et seq.* of the Federal Rules of Civil Procedure on behalf of the all persons or entities that purchased or otherwise acquired the publicly traded common stock of Amazon during the Class Period. Excluded from the Class are Defendants, directors, and officers of the Company, and their families and affiliates.

52.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits

---

[2] Paris Martineau, *Amazon Quietly Axed Millions of Square Feet of Warehouse Space*, THE INFORMATION (May 24, 2022), *available at* https://www.theinformation.com/articles/amazon-quietly-axed-millions-of-square-feet-of-warehouse-space, last visited on July 7, 2021.

CLASS ACTION COMPLAINT - 15

1  to the parties and the Court. As of April 28, 2022, Amazon had 508,720,481 shares of common

2  stock outstanding, owned by thousands of persons. Following its June 3 stock split, Amazon has

3  10,174,409,620 shares outstanding, owned by thousands of persons.

4      53.    There is a well-defined community of interest in the questions of law and fact

5  involved in this case. Questions of law and fact common to the members of the Class that

6  predominate over questions that may affect individual Class members include:

7      a.    whether Defendants violated the Exchange Act;

8      b.    whether Defendants omitted and/or misrepresented material facts;

9      c.    whether Defendants' statements omitted material facts necessary in order to make

10      the statements made, in light of the circumstances under which they were made,

11      not misleading;

12      d.    whether defendants knew or recklessly disregarded that their statements were

13      false and misleading;

14      e.    whether the prices of Amazon common stock were artificially inflated; and

15      f.    the extent of damage sustained by Class members and the appropriate measure of

16      damages.

17      54.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class

18  sustained damages from defendants' wrongful conduct.

19      55.    Plaintiff will adequately protect the interests of the Class and has retained counsel

20  who are experienced in class action securities litigation. Plaintiff has no interests that conflict

21  with those of the Class.

22      56.    A class action is superior to other available methods for the fair and efficient

23  adjudication of this controversy. Furthermore, as the damages suffered by individual Class

24  members may be relatively small, the expense and burden of individual litigation makes it

25  impossible for members of the Class to individually redress the wrongs done to them. There will

26  be no difficulty in the management of this action as a class action.

CLASS ACTION COMPLAINT - 16

1   **VI.    LOSS CAUSATION**

2        57.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused

3   the economic loss suffered by Plaintiff and the Class.

4        58.    During the Class Period, Plaintiff and the Class purchased Amazon securities at

5   artificially inflated prices and were damaged thereby.  The price of the Company's securities

6   declined significantly when the misrepresentations made to the market, and/or the information

7   alleged herein to have been concealed from the market, and/or the effects thereof, were revealed,

8   causing investors' losses.

9        59.    The market for Amazon securities was open, well-developed and efficient at all

10  relevant times.  As a result of these materially false and/or misleading statements, and/or failures

11  to disclose, Amazon securities traded at artificially inflated prices during the Class Period.

12  Plaintiff and other members of the Class purchased or otherwise acquired Amazon's securities

13  relying upon the integrity of the market price of the Company's securities and market information

14  relating to Amazon, and have been damaged thereby.

15       60.    During the Class Period, Defendants materially misled the investing public,

16  thereby inflating the price of Amazon securities, by publicly issuing false and/or misleading

17  statements and/or omitting to disclose material facts necessary to make Defendants' statements,

18  as set forth herein, not false and/or misleading. The statements and omissions were materially

19  false and/or misleading because they failed to disclose material adverse information and/or

20  misrepresented the truth about Amazon's business, operations, and prospects as alleged herein.

21       61.    At all relevant times, the material misrepresentations and omissions particularized

22  in this Complaint directly or proximately caused or were a substantial contributing cause of the

23  damages sustained by Plaintiff and other members of the Class.  As described herein, during the

24  Class Period, Defendants made or caused to be made a series of materially false and/or

25  misleading statements about Amazon's financial well-being. These material misstatements

26  and/or omissions had the cause and effect of creating in the market an unrealistically positive

CLASS ACTION COMPLAINT - 17

assessment of the Company and its financial well-being, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## VII.   APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

62.    The market for Amazon securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Amazon securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Amazon securities and market information relating to Amazon, and have been damaged thereby.

63.    During the Class Period, the artificial inflation of Amazon stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Amazon's business, operations, and results. These material misstatements and/or omissions created an unrealistically positive assessment of Amazon and its business, operations, and results, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

64.    At all relevant times, the market for Amazon securities was an efficient market for the following reasons, among others:

CLASS ACTION COMPLAINT - 18

a.   Amazon was listed and actively traded on the NASDAQ, a highly efficient and automated market;

b.   As a regulated issuer, Amazon filed periodic public reports with the SEC and/or the NASDAQ;

c.   Amazon regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d.   Amazon was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

65.    As a result of the foregoing, the market for Amazon's securities promptly digested current information regarding Amazon from all publicly available sources and reflected such information in Amazon's stock price. Under these circumstances, all purchasers of Amazon's securities during the Class Period suffered similar injury through their purchase of Amazon's securities at artificially inflated prices and a presumption of reliance applies.

66.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  importance of the Class Period material misstatements and omissions set forth above, that

2  requirement is satisfied here.

3  **VIII.   NO SAFE HARBOR**

4       67.    The statutory safe harbor provided for forward-looking statements under certain

5  circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

6  The statements alleged to be false and misleading herein all relate to then-existing facts and

7  conditions. In addition, to the extent certain of the statements alleged to be false may be

8  characterized as forward looking, they were not identified as "forward-looking statements" when

9  made and there were no meaningful cautionary statements identifying important factors that

10  could cause actual results to differ materially from those in the purportedly forward-looking

11  statements. In the alternative, to the extent that the statutory safe harbor is determined to apply

12  to any forward-looking statements pleaded herein, Defendants are liable for those false forward-

13  looking statements because at the time each of those forward-looking statements was made, the

14  speaker had actual knowledge that the forward-looking statement was materially false or

15  misleading, and/or the forward-looking statement was authorized or approved by an executive

16  officer of Amazon who knew that the statement was false when made.

17  **COUNT I**

18

19  **VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5<br>PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS**

20

21       68.    Plaintiff incorporates by reference and realleges each and every allegation set

22  forth above, as though fully set forth herein.

23       69.    During the Class Period, Defendants carried out a plan, scheme and course of

24  conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing

25  public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and

26  other members of the Class to purchase Amazon securities at artificially inflated prices. In

CLASS ACTION COMPLAINT - 20

1   furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the

2   actions set forth herein.

3       70.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made

4   untrue statements of material fact and/or omitted to state material facts necessary to make the

5   statements not misleading; and (c) engaged in acts, practices, and a course of business that

6   operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort

7   to maintain artificially high market prices for Amazon common stock in violation of Section

8   10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All Defendants are sued

9   either as primary participants in the wrongful and illegal conduct charged herein or as controlling

10  persons as alleged below.

11      71.     Defendants, individually and in concert, directly and indirectly, by the use, means

12  or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

13  continuous course of conduct to conceal adverse material information about the business,

14  operations and future prospects of Amazon as specified herein.

15      72.     These Defendants employed devices, schemes, and artifices to defraud while in

16  possession of material adverse non-public information, and engaged in acts, practices, and a

17  course of conduct as alleged herein in an effort to assure investors of Amazon's value, which

18  included the making of, or participation in the making of, untrue statements of material facts and

19  omitting to state material facts necessary in order to make the statements made about Amazon

20  and its business operations in the light of the circumstances under which they were made, not

21  misleading, as set forth more particularly herein, and engaged in transactions, practices and a

22  course of business that operated as a fraud and deceit upon the purchasers of Amazon's common

23  stock during the Class Period.

24      73.     The Individual Defendants' primary liability, and controlling person liability,

25  arises from the following facts:   (1) the Individual Defendants were high-level executives,

26  directors, and/or agents at the Company during the Class Period and members of the Company's

CLASS ACTION COMPLAINT - 21

management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

74.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.   Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Amazon's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

75.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Amazon's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Amazon's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that

CLASS ACTION COMPLAINT - 22

1   was known to or recklessly disregarded by Defendants but not disclosed in public statements by

2   Defendants during the Class Period, Plaintiff and the other members of the Class acquired

3   Amazon's common stock during the Class Period at artificially high prices and were or will be

4   damaged thereby.

5       76.     At the time of said misrepresentations and omissions, Plaintiff and other members

6   of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the

7   other members of the Class and the marketplace known the truth regarding Amazon's financial

8   results, which was not disclosed by Defendants, Plaintiff and other members of the Class would

9   not have purchased or otherwise acquired their Amazon common stock, or, if they had acquired

10  such securities during the Class Period, they would not have done so at the artificially inflated

11  prices that they paid.

12      77.     SEC Regulation S-K17 C.F.R. § 229.303 was adopted with the goal of

13  "provid[ing] information relevant to an assessment of the financial condition and results of

14  operations of the registrant including an evaluation of the amounts and certainties of cash flows

15  . . . . The discussion and analysis must focus specifically on material events and uncertainties

16  known to management that are reasonably likely to cause reported financial information not to

17  be necessarily indicative of future operating results or of future financial condition. This includes

18  descriptions and amounts of matters that have had a material impact on reported operations, as

19  well as matters that are reasonably likely based on management's assessment to have a material

20  impact on future operations."  Amazon failed to provide adequate information to investors

21  regarding its hyper- aggressive capacity expansion and the relative demand that the Company

22  was seeing from consumers. As a result, investors suffered substantial losses when Amazon

23  belatedly acknowledged that it had overbuilt capacity to such an extent that it was incurring

24  several billion dollars in costs associated with over-expansion and that it was pivoting to

25  engaging in cost control measures.

26      78.     By virtue of the foregoing, Defendants have violated Section 10(b) of the

CLASS ACTION COMPLAINT - 23

Exchange Act, and Rule 10b-5 promulgated thereunder.

79.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

80.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## COUNT II

## VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT AGAINST THE INDIVIDUAL DEFENDANTS

81.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

82.     The Individual Defendants acted as controlling persons of Amazon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

83.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have

CLASS ACTION COMPLAINT - 24

1   had the power to control or influence the particular transactions giving rise to the securities

2   violations as alleged herein, and exercised the same.

3       84.   As set forth above, Amazon and the Individual Defendants each violated Section

4   10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this

5   Complaint.

6       85.   By virtue of their positions as controlling persons, the Individual Defendants are

7   liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of

8   Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in

9   connection with their purchases of the Company's common stock during the Class Period.

10      86.   This action was filed within two years of discovery of the fraud and within five

11  years of each Plaintiff's purchases of securities giving rise to the cause of action.

12                          **PRAYER FOR RELIEF**

13  WHEREFORE, Plaintiff demands judgment as follows:

14      a.   Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the

15  Federal Rules of Civil Procedure on behalf of the Class defined herein;

16      b.   Awarding Plaintiff and the other members of the Class damages in an amount

17  which may be proven at trial, together with interest thereon;

18      c.   Awarding Plaintiff and the other members of the Class pre-judgement and post-

19  judgement interest, as well as their reasonable attorneys' and experts' witness fees and other

20  costs; and

21      d.   Awarding such other relief as this Court deems just and proper.

22                          **JURY TRIAL DEMANDED**

23  Plaintiff hereby demand a trial by jury.

24  \\\

25  \\\

26  \\\

CLASS ACTION COMPLAINT - 25

1    DATED this 8th day of July, 2022.

2                    Respectfully submitted,

3                    **TOUSLEY BRAIN STEPHENS PLLC**

4                    /s/ *Kim D. Stephens*
                      Kim D. Stephens, P.S., WSBA #11984

5                    /s/ *Cecily C. Jordan*
                    Cecily C. Jordan, WSBA #50061

6                    1200 Fifth Avenue, Suite 1700
                    Seattle, WA 98101

7                    Tel: (206) 682-5600
                    Fax: (206) 682-2992

8                    kstephens@tousley.com
                    cjordan@tousley.com

9

10                   *Lead Counsel for Plaintiff*

11                   **BARRACK, RODOS & BACINE**

12                   STEPHEN R. BASSER*
                    SAMUEL M. WARD*

13                   600 West Broadway, Suite 900
                    San Diego, CA  92101

14                   sbasser@barrack.com
                    sward@barrack.com

15                   Telephone:  (619) 230-0800
                    Facsimile:  (619) 230-1874

16                    -and-

17                   **BARRACK, RODOS & BACINE**

18                   JEFFREY A. BARRACK*
                    3300 Two Commerce Square

19                   2001 Market Street
                    Philadelphia, PA 19103

20                   E-mail:  jbarrack@barrack.com
                    Telephone:  (215) 963-0600

21                   Facsimile:  (215) 963-0838

22                   *Counsel for the Detectives Endowment Association Annuity Fund*

23                   *Pro Hac Vice* application to be filed

24

25

26

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

# Attachment A

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Carmine D. Russo, on behalf of the Detectives Endowment Association Annuity Fund (the "Detectives Fund"), hereby certify that:

1.     I am authorized to make this certification as the Executive Director of the Detectives Fund.

2.     I have reviewed a complaint filed against Amazon.com, Inc. alleging violations of the federal securities laws.

3.     The Detectives Fund did not purchase the securities that are the subject of this action at the direction of its counsel, nor in order to participate in any private action under the United States securities laws.

4.     The Detectives Fund is willing to serve as a lead plaintiff and representative party on behalf of the class in this action, including providing testimony at deposition and trial, if necessary. The Detectives Fund fully understands the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action on behalf of the class.

5.     The Detectives Fund's transactions in Amazon.com, Inc. securities that are the subject of this action are set forth on Exhibit A attached hereto.

6.     During the three years prior to the date of this certification, the Detectives Fund has not served or been appointed to serve as a representative party on behalf of a class asserting federal securities law claims.

7.      During the three years prior to the date of this certification, the Detectives Fund sought as a representative party on behalf of a class asserting federal securities law claims in the following case:

- *Farhar v. Ontrak, Inc.*, No. 21-cv-01987 (C.D. Cal.)

8.      The Detectives Fund will not accept any payment for serving as a representative party on behalf of a class beyond its *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5ᵗʰ day of July 2022.

_____
Carmine D. Russo

# EXHIBIT A

Detectives' Endowment Association Annuity Fund
Amazon.com, Inc.
Class Period: 07/30/2021 through 04/28/2022

| | | PURCHASES | | | | SALES | | |
|---|---|---|---|---|---|---|---|---|
| **DATE** | **SHARES** | **PRICE/SH** | **AMOUNT** | | **DATE** | **SHARES** | **PRICE/SH** | **AMOUNT** |
| Beg. Bal. | 470 | | | | | | | |
| 7/30/2021 | 17. | 3,337.50 | | | | | | |
| 8/3/2021 | 2. | 3,300.00 | | | | | | |
| 8/11/2021 | 6. | 3,300.8611 | | | | | | |
| 8/12/2021 | 9. | 3,274.7547 | | | | | | |
| 8/16/2021 | 17. | 3,236.9735 | | | | | | |
| 8/19/2021 | 8. | 3,199.9511 | | | | | | |
| 9/1/2021 | 28. | 3,517.3709 | | | | | | |
| 9/3/2021 | 10. | 3,449.7111 | | | | | | |
| 10/29/2021 | 25. | 3,294.0771 | | | | | | |
| 12/13/2021 | 15. | 3,396.8735 | | | | | | |
| 12/15/2021 | 12. | 3,337.4099 | | | | | | |
| 12/16/2021 | 3. | 3,392.2322 | | | | | | |
| 1/10/2022 | 21. | 3,150.088 | | | | | | |
| 1/21/2022 | 20. | 2,994.9115 | | | | | | |
| 4/28/2022 | 24. | 2,618.00 | | | | | | |
| Beg. Bal. | 812. | | | | | | | |
| 1/31/2022 | 44. | 2,949.91 | | | | | | |